**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE ALLERGAN PLC SECURITIES
LITIGATION

No. 18 Civ. 12089 (CM)(GWG)

**DEKALB COUNTY PENSION FUND'S REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF ITS MOTION TO BE APPOINTED LEAD PLAINTIFF AND
THE SELECTION OF ITS COUNSEL AS LEAD COUNSEL**

**TABLE OF CONTENTS**

SUMMARY ................................................................................................................. 1

I.     UNION IS NOT ENTITLED TO APPOINTMENT ............................................. 3

II.    MACOMB IS NOT ENTITLED TO APPOINTMENT ....................................... 6

III.   DETROIT GRS IS NOT ENTITLED TO APPOINTMENT ............................. 6

IV.   DEKALB AND THE FARUQI FIRM SHOULD BE APPOINTED TO LEAD THE
CLASS ............................................................................................................... 7

CONCLUSION ............................................................................................................... 8

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Gutman v. Sillerman*,
  No. 15 Civ. 7192 (CM), 2015 WL 13791788 (S.D.N.Y. Dec. 8, 2015) (McMahon, J.)...........3

*In re IMAX Sec. Litig.*,
  No. 06 Civ 6128(NRB), 2009 WL 1905033 (S.D.N.Y. June 29, 2009).................................4

*Police and Fire Ret. Sys. of the City of Detroit v. SafeNet, Inc.*,
  No. 06 Civ. 5797(PAC), 2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007)..................................6

*Sprint Commnc'ns Co. v. APCC Servs., Inc.*,
  554 U.S. 269 (2008)........................................................................................................3

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
  549 F. 3d 100 (2d Cir. 2008)............................................................................................3

DeKalb County Pension Fund ("DeKalb") respectfully submits this reply memorandum of law in further support of its motion to be appointed lead plaintiff, for the selection of its counsel to be selected as lead counsel and in further opposition to the motions to be appointed lead plaintiff filed by Union Asset Management Holding AG ("Union") (Dkt. Nos. 157 and 171), the General Retirement System of the City of Detroit ("Detroit GRS") (Dkt. Nos. 154 and 169), and Macomb County Employees' Retirement System ("Macomb County") (Dkt. Nos. 165, 178).

## SUMMARY

Of the four movants contending for lead plaintiff in this Action, DeKalb is the only one that was motivated to appear by the PSLRA's filing deadline on February 19, 2019 and move for appointment as lead plaintiff. In the original PSLRA lead plaintiff application process, DeKalb demonstrated that it met the PSLRA's other requirements to be appointed sole lead plaintiff and for its counsel, Faruqi & Faruqi, LLP, to be appointed sole lead counsel. Dkt. Nos. 25, 26. After coming in second in the original lead plaintiff contest, DeKalb continued to monitor this case with regular presentations from its counsel. DeKalb has now stepped forward again and *reaffirmed* its commitment to the Allergan class members and its ability to continue to efficiently and expeditiously prosecute class claims at this stage of the case. Dkt. Nos. 159-61, 176-77.

In addition to DeKalb's motion, the Court has before it new motions from three additional Allergan shareholders who failed to appear in February 2019 but who now seek appointment as lead plaintiff. None of the movants qualify to be appointed lead plaintiff in this case at this stage of the litigation for the following reasons:

- Union is subject to numerous unique defenses: (i) its claim to have the largest financial interest is not reliable, because, as DeKalb (Dkt. No. 176) and Macomb (Dkt. No. 178) have shown, Union has failed to demonstrate that it has Article III standing to claim those losses and appears to have inaccurately reported or

omitted Allergan transactions and/or holdings; (ii) Union's complex structure of nineteen different entities will needlessly increase costs and delays; and (iii) Union appears to have a potential conflict of interest based on its leadership role in different Allergan securities class action;

- Macomb lacks the experience to vigorously prosecute class claims, and by withdrawing its entire response brief, has buckled under pressure from Union and waived its challenge to any of the competing motions (Dkt. No. 180);[1] and

- Detroit, who, in election polling parlance, is in a statistical tie with DeKalb regarding losses, also lacks experience to act as sole lead. Indeed, Detroit has so far unnecessarily moved to intervene, submitting an entirely premature copycat version of BRS's motion for class certification, and appears primarily interested in creating merely the appearance of zealous representation. *See e.g.,* Dkt. No. 169 (Detroit's opposition memorandum filed, on November 2, 2020, ten days prior to the November 12, 2020 deadline).

At bottom, DeKalb is the only movant that has demonstrated that it has the interest, motivation and qualifications to fill the role of lead plaintiff and quickly get this case back on track. DeKalb is subject to *no* unique defenses, has led large complex securities class actions as sole lead, its chosen lead counsel is experienced, and has faced no significant challenge from the other movants.

---

[1] Macomb also does not oppose the appointment of DeKalb as lead plaintiff as it withdrew its *entire memorandum* of law in opposition to all other competing movants and all supporting documents in support of its opposition. Dkt. No. 180.

## I.    UNION IS NOT ENTITLED TO APPOINTMENT

Union should not be appointed lead plaintiff for the following reasons: (1) Union lacks

Article III standing and therefore none of its reported losses should count; (2) Union is not

adequate because it is subject to the unique defense that it appears to have inaccurately reported

or omitted Allergan transactions and/or holdings, including in its PSLRA certification; (3) its

tangled structure will lead to onerous discovery, expense, and delay;[2] and (4) Union is conflicted.

Union lacks Article III standing because it cannot show "injury-in-fact". *See W.R. Huff*

*Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F. 3d 100, 106 n.5 (2d Cir. 2008) (The

Second Circuit has stated "that district courts should be mindful that named plaintiffs in a class

action 'must allege and show that they personally have been injured, not that injury has been

suffered by other, unidentified members of the class . . . .'"); *see also Sprint Commnc'ns Co. v.*

*APCC Servs., Inc.*, 554 U.S. 269, 287-88 (2008)).

Union acknowledges that it "is an institutional asset manager, which manages investment

assets through separate funds . . . ." Dkt. No. 158 at 2 n.1. The Second Circuit has held (and this

Court recognized) that "an investment manager lacks Article III standing to assert claims under

the federal securities laws on behalf of its client." *Gutman v. Sillerman*, No. 15 Civ. 7192 (CM),

2015 WL 13791788, at *2 (S.D.N.Y. Dec. 8, 2015) (McMahon, J.) (citing *Huff*, 549 F. 3d at 109-

10). Union claims that it has authority to seek appointment on behalf of funds that are managed

by other asset managers through assignment. Dkt. No. 158 at 2 n.1. But the assignments under

which Union purports to claim authorization are defective: the assignments purport to transfer

---

[2]    The unique issues faced by Union that have been raised by DeKalb were also raised in large part by Macomb in its since withdrawn opposition memorandum of law filed on November 12, 2020. Dkt. 178. DeKalb has independently verified the specific assertions made by Macomb and summarizes and incorporates Macomb's arguments here for the Court's benefit. *See also id.*, Section II(B)(1)-(4) at 4-15.

the claims of the three asset managers (Union Investment Luxembourg S.A. ("UIL"), Union

Investment Institutional GmbH ("UIN") and Union Investment Privatfonds GmbH ("UIP")), not

the claims of the actual funds themselves. *See* Dkt. No. 176 at 9-10; *see also* (Dkt. No. 178 at 5-

7). Union provides no evidence of authority on the part of the asset managers, or accounting for

which of the funds the managers have the purported authority to assert claims for. Even the *risk*

that a movant's standing may be defective has been held as grounds to deny lead plaintiff

applications. *See In re IMAX Sec. Litig.*, No. 06 Civ 6128(NRB), 2009 WL 1905033, at *3

(S.D.N.Y. June 29, 2009) ("irrespective of whether the assignments of claim cure [the movant's]

deficient Article III standing, [the movant] now 'faces unique legal issues that other class

members do not.' . . .  [and] it is possible that these issues could ultimately severely prejudice the

class, either at the class certification stage or on some subsequent appeal. There seems little

reason for us to subject the class members to such a risk.").[3]

Additionally, both DeKalb and Macomb reviewed publicly available information about

asset managers UIL, UIN, and UIP and the individual funds for which Union is reporting losses

and it appears that Union has not made an accurate accounting for losses, which would subject

Union to unique defenses and other issues.[4] The asset managers appear to have failed to report or

account for Allergan stock *transactions in the Class Period* by other funds. UIL failed to include

apparent Class Period *transactions* for the following two funds: (1) UniSector: BioPharma, and

(2) UniSector – HighTech. *See* Declaration of James M. Wilson Jr. in Support of DeKalb County

Pension Fund's Reply Memorandum of Law in Further Support of Its Motion to be Appointed

---

[3]     DeKalb refers to and incorporates by reference the case law cited by Macomb in support
of this proposition. *See* Dkt. No. 178 at 8-9.
[4]     This is in addition to the failure to report and/or account for another asset manager, BEA
Union Investment ("BEA"), which appears to have held Allergan stock during the Class Period.
*See* Dkt. No. at 6-7.

Lead Plaintiff and the Selection of Its Counsel to be Lead Counsel ("Wilson Decl."), Ex. 1. UIP appears to have failed to include Class Period *transactions* in Allergan stock for the following fund: (1) Suedwestbank-InterShare-Union. Wilson Decl., Ex. 2.

Further, DeKalb has independently verified the discrepancies that Macomb identified in its opposition brief (Dkt. 178 at 13-14 (subsequently "withdrawn" due to issues unrelated to the accuracy of the content of the brief)) between Union's reported transactions during the Class Period in its PSLRA Certification and transactions identified in the expert report of Zachary Nye, Ph.D. submitted on January 31, 2020 in support of BRS's motion for class certification. Dkt. No. 94-1. The holdings for Allergan stock identified in Dr. Nye's report for UIL and UIP are not consistent with the transactions Union listed in its submissions to the Court. *See* Wilson Decl. ¶¶ 7-8; *see also* Dkt. No. 178 at 13-14. DeKalb's counsel also reviewed publicly available information about Union's reported transactions in its PSLRA Certification and identified further discrepancies. *See* Wilson Decl. ¶¶ 3-6.

In addition to the inadequacies addressed above, Union's motion presents a complex structure of nineteen different entities that will needlessly increase costs and delay. The structure of the subparts of Union that give rise to its claim for damages includes UIL, UIN, UIP, and fifteen distinct funds. *See* Dkt. No. 162-1. The entities are based in two countries, Germany and Luxembourg, and are "managed" under the laws of those countries. Dkt. No. 162-1 at 2, 4, 6. This strongly suggests that there will be a need for a substantial amount of translation and expert analysis of foreign law. Nearly all of the public information relating to Union, UIL, UIP, and eleven of the funds is only presented in German, and there is virtually no information publicly available for UIN or the remaining four funds for which it claims losses. *See* Dkt. No. 178 at 9-10.

Finally, as previously raised, Union currently serves as lead plaintiff in another securities class action against Allergan (*In re Allergan Generic Drug Pricing Sec. Litig.*, No. 16-cv-9449 (KSH)(CLW) (D.N.J.)) (Dkt. No. 158 at 7; Dkt. No. 162-4 at 2, ¶ 3 and represents a different class of shareholders. There is a potential conflict in Union's ability to fully and fairly fulfill its fiduciary duties to the Class. The Court should avoid any question that the next lead plaintiff can fulfill such duties and not appoint Union.

## II.    MACOMB IS NOT ENTITLED TO APPOINTMENT

The Court should choose DeKalb over Macomb. Macomb has abandoned its motion for appointment as lead plaintiff by withdrawing its opposition to all other movants.

## III.    DETROIT GRS IS NOT ENTITLED TO APPOINTMENT

Detroit GRS's claimed losses are close enough to DeKalb's losses that that the largest financial interest should not be the dispositive factor. New York District courts have long recognized that where the difference in alleged losses between movants is modest, the "losses [are] roughly equal." *See generally Police and Fire Ret. Sys. of the City of Detroit v. SafeNet, Inc.*, No. 06 Civ. 5797(PAC), 2007 WL 7952453, at *2 (S.D.N.Y. Feb. 21, 2007) (recognizing that a $40,000 or an approximately 2.2% difference is a "very slight difference" that "cannot dictate such an important result"). In this case Detroit's losses are $779,286 and DeKalb's losses are $753,097.  Such a small difference in losses should not be the deciding factor in this case.

Instead, the Court should select DeKalb over Detroit GRS because DeKalb timely filed for lead plaintiff within the statutory sixty-day period and has demonstrated itself to be the most adequate lead plaintiff. Additionally, DeKalb has superior experience serving as a sole lead plaintiff as Detroit GRS has not identified any large securities class action in which it has served as sole lead plaintiff. It appears Detroit GRS has served only as a co-lead plaintiff in groups with

other investors in cases where multiple law firms served as co-lead counsel. Dkt. No. 156-1. The steps Detroit GRS has taken to date to seek the lead plaintiff position only undermine its claim that it can adequately represent the class. It has unnecessarily moved to intervene in this case under Fed. R. Civ. P. 24 (Dkt. Nos. 154, 155), potentially adding further complications and delays in this case. It has also conflated its current motion to be appointed lead plaintiff with its hoped-for but yet-to-be-filed motion to be appointed class representative, arguing to be exempt from the preliminary requirement of showing itself to be the most adequate lead plaintiff. *Id.*

Finally, Detroit GRS's offering of a proposed motion for class certification as evidence of its ability to pick up where this case left off is nothing of the sort. The fact that Detroit GRS moves to have filed immediately upon its appointment a copycat version of the previously filed motion for class certification in this case, without benefit of any review whatsoever of the discovery, including documents filed under seal, is an indication of Detroit GRS's questionable judgment and undue haste. Detroit GRS appears to place more emphasis on making a show of speed for the Court than a show of diligence for the Class.

## IV.   DEKALB AND THE FARUQI FIRM SHOULD BE APPOINTED TO LEAD THE CLASS

DeKalb is the only movant that is both not subject to unique defenses and has the experience to take charge and lead this case.

First, DeKalb has now, the largest financial interest of all the original qualified movants for lead plaintiff.

Second, no movant has claimed that DeKalb is subject to any unique defenses and has not challenged DeKalb's adequacy and ability to act as lead plaintiff on behalf of Allergan shareholders in this case.

Third, as previously discussed, DeKalb has a track record of acting as sole lead plaintiff. For example, DeKalb was the sole lead plaintiff in *In re ArthroCare Corporation Securities Litigation*, United States District Court for the Western District of Texas, Civil Action No. 1:08-cv-00574-SS, in which $74 million was recovered for the class. Currently, DeKalb is serving as sole lead plaintiff in the following securities cases: *Lowthorp v. Mesa Air Group, Inc.*, No. 2:20-cv-00648-MTL (D. Ariz. Apr. 1, 2020) and *In re Mattel, Inc. Securities Litigation*, No. 2:19-cv-10860-AB (PLAx) (C.D. Cal. Dec. 24, 2019).

Fourth, the Faruqi Firm has the breadth and depth of experience to take charge. The Faruqi Firm is a minority-owned and woman-owned law firm whose adequacy to serve as lead counsel in this case has not been challenged and, as reflected in the firm's resume, possesses extensive experience litigating complex class actions on behalf of plaintiffs, including securities class actions. Dkt. No. 161-2.

## CONCLUSION

For the foregoing reasons and the reasons set forth in its Opening Memorandum of Law and its Opposition Memorandum of Law, DeKalb respectfully requests that the Court (1) appoint DeKalb as Lead Plaintiff for the Action, (2) approve DeKalb's selection of the Faruqi Firm as Lead Counsel for the Class and (3) grant such other relief as the Court may deem just and proper.

Dated: November 17, 2020

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: */s/ James M. Wilson, Jr.*

Nadeem Faruqi
Lubna Faruqi
Robert W. Killorin (admitted *pro hac vice*)
James M. Wilson, Jr.
685 Third Avenue, 26th Floor
New York, NY 10017
Ph: (212) 983-9330

Fx: (212) 983-9331
E-mail: nfaruqi@faruqilaw.com
lfaruqi@faruqilaw.com
rkillorin@faruqilaw.com
jwilson@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff*
*DeKalb County Pension Fund and*
*[Proposed] Lead Counsel for the Class*