**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Allergan PLC Securities Litigation | No. 18 Civ. 12089 (CM)(GWG) |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO**
**<u>LEAD PLAINTIFF'S MOTION TO COMPEL</u>**

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

PROCEDURAL BACKGROUND ........................................................................................... 2

ARGUMENT ............................................................................................................................ 6

   I.   DEFENDANTS HAVE PROPERLY CLAIMED PRIVILEGE OVER DOCUMENTS RELATING TO SO-CALLED "BUSINESS-RELATED MATTERS" FOR WHICH NO INDIVIDUAL ATTORNEYS ARE IDENTIFIED .............................................................. 7

   II.  DEFENDANTS HAVE PROPERLY CLAIMED PRIVILEGE OVER DOCUMENTS RELATING TO SO-CALLED "BUSINESS-RELATED MATTERS" ON WHICH ATTORNEYS WERE COPIED .................................................................................... 11

   III. DEFENDANTS HAVE PROPERLY CLAIMED PRIVILEGE OVER DOCUMENTS RELATING TO SO-CALLED "POSSIBLY LEGAL SUBJECT MATTERS" FOR WHICH NO INDIVIDUAL ATTORNEYS ARE IDENTIFIED .................................... 14

   IV. DEFENDANTS HAVE NOT WAIVED PRIVILEGE OVER DOCUMENTS SHARED WITH THIRD PARTY CONSULTANTS ...................................................................... 14

   V.  DEFENDANTS HAVE NOT WAIVED PRIVILEGE OVER DOCUMENTS PURPORTED TO HAVE BEEN "WIDELY DISSEMINATED" TO ALLERGAN EMPLOYEES ................................................................................................................. 14

CONCLUSION ........................................................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Am. C.L. Liberties Union v. U.S. Dep't of Just.*,
  90 F. Supp. 3d 201 (S.D.N.Y. 2015) ..................................................................................7

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*,
  160 F.R.D. 437 (S.D.N.Y. 1995) ..................................................................................7, 10

*Certain Underwriters at Lloyds's v. Nat'l R.R. Passenger Corp.*,
  162 F. Supp. 3d 145 (E.D.N.Y. 2016) ..................................................................................8

*Excess Ins. Co., Ltd. v. Rochdale Ins. Co.*,
  No. 05 Civ 10174, 2007 WL 2900217 (S.D.N.Y. Oct. 4, 2007) .............................................9

*Gen. Elec. Co. v. United States*,
  No. 3:14-CV-00190 (JAM), 2015 WL 5443479 (D. Conn. Sept. 15, 2015) ....................10, 12

*In re Abilify (Aripiprazole) Prods. Liab. Litig.*,
  No. 3:15-md-2734, 2017 WL 6757558 (N.D. Fla. Dec. 29, 2017)........................................16

*In re Buspirone Antitrust Litig.*,
  211 F.R.D. 249 (S.D.N.Y. 2002) ................................................................................ 11-13, 20

*In re Copper Mkt. Antitrust Litig.*,
  200 F.R.D. 213 (S.D.N.Y. 2001) ..................................................................................18

*In re Currency Conversion Antitrust Litig.*,
  No. 05 Civ 7116(WHP)(THK), 2010 WL 4365548 (S.D.N.Y. Nov. 3, 2010).............7, 10, 14

*In re Grand Jury Subpoenas Dated March 24, 2003*,
  265 F. Supp. 2d 321 (S.D.N.Y. 2003) ........................................................................ 15-16, 19

*In re N.Y. Renu with Moistureloc Prod. Liab. Litig.*,
  No. MDL 1785, 2008 WL 2338552 (D.S.C. May 8, 2008)....................................................11

*In re Pfizer, Inc. Sec. Litig.*,
  No. 90 Civ. 1260 (SS), 1993 WL 561125 (S.D.N.Y. Dec. 23, 1993) ....................................12

*In re Rivastigmine Pat. Litig.,.*,
  237 F.R.D. 69, 84 (S.D.N.Y. 2006) ..................................................................................8

*Pearlstein v. Blackberry Ltd*,
No. 13-CV-7060, 2019 WL 2281280 (S.D.N.Y. May 29, 2019) ............................................17

*S.E.C. v. Beacon Hill Asset Mgmt. LLC*,
231 F.R.D. 134 (S.D.N.Y. 2004) ...................................................................................... 9-10

*Scott v. Chipotle Mexican Grill, Inc.*,
94 F. Supp. 3d 585 (S.D.N.Y. 2015)..................................................................................7, 20

*TVT Records, Inc. v. The Island Def Jam Music Grp.*,
No. 02 Civ. 6644, 2003 WL 749801 (S.D.N.Y. Mar. 5, 2003) ..............................................11

*United States v. Mejia*,
655 F.3d 126 (2d Cir. 2011)...............................................................................................20

*Universal Standard Inc. v. Target Corp.*,
331 F.R.D. 80 (S.D.N.Y. 2019) .........................................................................................14

**Other Authorities**

8 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice &
Procedure* § 2016.1.............................................................................................................9

Mark Magnusson et al., *The Epidemiology of Breast Implant-Associated Anaplastic
Large Cell Lymphoma in Australia and New Zealand Confirms the Highest Risk for
Grade 4 Surface Breast Implants*............................................................................................3

Defendants Allergan plc ("Allergan" or the "Company"), Brenton L. Saunders, Maria Terasa Hilado, Matthew M. Walsh, Frances DeSena, Mark Marmur, Paul Bisaro, and William Meury (collectively, "Defendants"), by and through their undersigned counsel, respectfully submit this memorandum of law in opposition to Lead Plaintiff DeKalb County Pension Fund's ("DeKalb" or "Plaintiff") Motion to Compel.

## PRELIMINARY STATEMENT

Plaintiff's motion to compel is the culmination of a persistent effort by Plaintiff to burden the Court with generic, vague, and constantly evolving privilege objections to a multitude of documents, without first engaging in any meaningful attempts to meet and confer with Defendants concerning those issues.  Indeed, since Plaintiff's last attempt to raise privilege issues with the Court—a letter request raising a number of issues that had not previously been discussed with Defendants and challenging many documents on grounds that had never been raised before, which was prematurely filed while Defendants were still undertaking an extensive re-review to address the meritless privilege issues originally raised by Plaintiff—Defendants have completed their re-review of thousands of documents, have produced hundreds of additional documents, and have revised the descriptions of hundreds of others on their Privilege Logs.  In response to these extensive (and burdensome) efforts by Defendants, however, Plaintiffs merely sent a perfunctory letter stating their belief that attorney client privilege did not apply or had been waived, and proceeded to file the instant motion.  Moreover, this motion—like the one before it—again reframes the privilege issues raised by Plaintiff in a way that bears little resemblance to the ones originally discussed by the parties, and further challenges additional documents on additional grounds that were never previously raised with Defendants.  Plaintiff's

failure to engage in good-faith meet-and-confer efforts on these issues thus provides an independent basis to deny its motion.

But even putting aside the procedural shortcomings of Plaintiff's motion, Plaintiff's generic challenges to Defendants' privilege designations also fail on the merits.  Indeed, those challenges rely on a number of sweeping assertions that have no basis in law, including that a party must specifically name the individual attorney involved in a communication to assert privilege, that an email can only be privileged if it is sent to or from an attorney, that legal advice is not privileged if it concerns a "business-related" subject, and that the presence of any third party automatically waives privilege.  Similarly, Plaintiff also advances a number of unsupported characterizations of Defendants' privilege review that have no basis in fact, including contending without any support that Defendants "ha[ve] not even made an effort to determine whether any attorney was involved" or are "unable to determine whether any attorney was involved," Memorandum of Law In Support of Lead Plaintiff's Motion to Compel ("Pl.'s Br.") at 10-11, ECF No. 24 at 10-11, which are contradicted by the extensive logs prepared by Defendants that have responded to every issue previously raised by Plaintiff.  In sum, the bright-line rules advanced by Plaintiff do not exist, and Defendants have amply supported their privilege assertions through multiple reviews of the documents previously challenged by Plaintiff.

Accordingly, for these reasons and those described in more detail below, Plaintiff's motion should be denied in its entirety.

## PROCEDURAL BACKGROUND

This is a putative securities fraud class action brought on behalf of investors in Allergan securities.  *See* Consolidated Amended Complaint, ECF No. 58.  Following the district court's dismissal of nearly all of Plaintiff's claims, only a single narrow claim remains in the case.  *See*

Decision and Order Granting in Part and Denying in Part Defendants Motion to Dismiss, ECF No. 81. That claim, which alleges that Allergan's textured breast implants are "more closely associated with the incidence of BIA-ALCL than other breast implants on the market," *id.* at 43, is demonstrably false based on currently-available medical literature.[1]

Nonetheless, Defendants have produced extensive discovery in this case. In all, Defendants have produced documents from twenty-five separate custodians totaling 542,393 pages. Declaration Of Jared Gerber In Opposition To Lead Plaintiff's Motion To Compel (Gerber Decl.) ¶ 2. Out of these significant productions, Defendants withheld 6,236 documents as privileged and produced another 1,843 documents with privilege redactions. *Id.* Notably, however, Defendants' productions included many documents that copied lawyers and/or were labeled "privileged and confidential," where Defendants determined that those documents were not actually privileged, a fact that Plaintiff's motion to compel failed to disclose to the Court even though Plaintiff used many such documents during their depositions of Defendants. *Id.* ¶ 3.

Defendants first produced their Privilege Withhold Log and Privilege Redact Log (together, the "Privilege Logs") to the prior lead plaintiff on July 27, 2020. *Id.* ¶ 4. As set forth in Local Rule 26.2, those Privilege Logs identified: (i) the type of document being withheld or redacted (*e.g.*, email, presentation, etc.); (ii) the date and time; (iii) any individuals in the "To," "From," and "CC/BCC" lines of emails; (iv) the "Privilege Basis" (*e.g.*, requesting legal advice, providing legal advice, etc.); (v) the "Privilege Subject Matter"; and (vi) the "Privilege Type" (*i.e.*, attorney client or work product). *See* Declaration of James M. Wilson, Jr. ("Wilson Decl."), Ex. 3 & 4, ECF No. 248. On September 17, 2020, at the request of the prior lead plaintiff,

---

[1] *See* Mark Magnusson et al., *The Epidemiology of Breast Implant-Associated Anaplastic Large Cell Lymphoma in Australia and New Zealand Confirms the Highest Risk for Grade 4 Surface Breast Implants*, 143 Plastic and Reconstructive Surgery J. 1285, 1288-89 (May 2019).

Defendants also produced a revised withhold log that, where available, listed the specific

attorneys on the underlying advice for log entries that did not otherwise indicate an attorney in

the "To," "From," or "CC/BCC" columns, as well as a list of file names for any attachments that

were withheld.  *Id.* at ¶ 5.

After the prior lead plaintiff was rejected as an inadequate class representative, DeKalb

was appointed as the new lead plaintiff on December 7, 2020.  *See* Decision and Order

Appointing DeKalb County as Lead Plaintiff and Faruqi and Faruqi as Lead Counsel, ECF No.

193.  Just four days later, on December 11, 2020, Defendants sent their Privilege Logs, as well as

the revised withhold log, to DeKalb.  Gerber Decl. ¶ 6.   Plaintiff did not raise any issues with

those privilege logs until more than four months later, at the end of April 21, 2021, when it sent

Defendants a letter challenging Defendants' privilege claims on multiple grounds, including

asserting that the so-called "fiduciary exception" to privilege applied to certain categories of

documents, that privilege had allegedly been waived with respect to certain documents by

sharing them with third parties, that certain documents were disseminated to Allergan employees

who allegedly did not have a "need to know," that with respect to other documents there was

purportedly no legal advice indicated on the log, that certain documents allegedly pertained to

"business matters," and that Defendants' work product designations were supposedly improper.

*Id.* ¶ 7.

After meeting and conferring with Plaintiff, and despite disagreeing with the validity of

any objection raised by Plaintiff, Defendants agreed to take a number of steps to respond to those

issues, in a good-faith attempt to resolve this dispute without burdening the Court, including:

(1) with respect to Plaintiff's challenge on the basis of the fiduciary exception, reviewing

hundreds of privileged documents identified by Plaintiff to determine if any reflected the specific

4

categories of information that Plaintiff sought; (2) with respect to Plaintiff's contention that Defendants' Privilege Logs did not specifically identify attorneys for every entry, supplementing their Privilege Logs by, where not already included, adding a column and listing the specific attorneys who were on the underlying legal advice, where available; (3) with respect to documents circulated to third parties, re-analyzing the roles of the third parties to determine if privilege had been waived; (4) with respect to the work product designations challenged by Plaintiff, re-reviewing the relevant documents to supplement the descriptions on the Privilege Logs and/or remove the designations; and (5) with respect to Plaintiff's challenge to thousands of other documents as potentially concerning business matters, re-reviewing those documents to confirm the initial determination, supplement the descriptions on the Privilege Logs, and/or produce the document.  Gerber Decl.  ¶ 8.

While Defendants' re-review was still ongoing, Plaintiff nonetheless filed a premature letter motion to compel Defendants to produce the privileged documents on June 2, 2021.  *See* Letter addressed to Magistrate Judge Gabriel W. Gorenstein from James M. Wilson, Jr. dated June 2, 2021, ECF No. 227.  Plaintiff's letter also challenged hundreds of documents that it had not previously raised with Defendants, in addition to challenging on new grounds hundreds of documents it previously challenged on different grounds.  *See* Letter addressed to Magistrate Judge Gabriel W. Gorenstein from Jared Gerber dated June 4, 2021, ECF No. 228.  The Court rejected Plaintiff's request, stating that, given that Defendants "agreed as part of the meet-and-confer process to re-review the subject documents and that re-review will be completed June 11, 2021, the Court denies the request at this time without prejudice to reinstatement on or before June 18, 2021."  Memo Endorsement, dated June 7, 2021, ECF No. 234.  Defendants subsequently completed their re-review on June 11, 2021, and produced revised versions of the

Privilege Logs that same day.  Gerber Decl. ¶ 10.[2]  More specifically, as part of those efforts, Defendants re-reviewed 2,391 documents for privilege, agreed to produce 531 documents that they had previously withheld, revised the redactions on another 40 documents, and revised the privilege log descriptions for over 1,000 documents, all at considerable burden and expense.  *Id.*

Notwithstanding Defendants' extensive re-review and supplemental productions, Plaintiff made no effort to meaningfully engage with the additional information provided by Defendants. Instead, shortly after receiving Defendants' revised logs and additional productions, Plaintiff sent a perfunctory letter to Defendants stating, "[b]ased on the information provided, it is our firm belief that the attorney-client privilege does not apply to the above categories of documents and/or the privilege has been waived."  *Id.* ¶ 11.  Now, without any additional effort to meet and confer with Defendants, Plaintiff again moves for an order compelling the production of hundreds of documents across five newly described categories of documents that were not the subject of any prior meet-and-confer discussions between the parties.  And, as with Plaintiff's prior trip to the Court, Plaintiff now challenges, for the first time, more than 100 documents that Plaintiff had not previously raised with Defendants in any of their prior correspondence.  *See*, *e.g.*, Wilson Decl., Ex. 3 (AGN-00399427); Ex. 4 (Log No. 563, 840).

## ARGUMENT

Plaintiff's categorical arguments that any documents that fall into the five categories they identify cannot be privileged is contrary to well-settled law.  "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be,

---

[2]  While Plaintiff asserts that "[o]n Tuesday, June 15, 2021, Defendants emailed Plaintiff *yet another* revised Redact Privilege Log and Withhold Privilege Logs reflecting further review and revisions," Pl.s' Br. at 6 (emphasis added), those logs contained only minor changes to a small number of entries correcting inadvertent errors, almost all relating to documents that Plaintiff did not challenge.  *See* Wilson Decl., Ex. 2.  With the exception of those minor corrections, the June 15 logs were the same as those produced on June 11.  Gerber Decl. 10.

and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance."
*Am. C.L. Liberties Union v. U.S. Dep't of Just.*, 90 F. Supp. 3d 201, 213-14 (S.D.N.Y. 2015)
(internal quotation marks omitted).  Given "the necessity of corporate employees discussing
advice received by one agent of the corporation," the privilege also protects from disclosure
communications among corporate employees that concern advice sought from, or rendered by,
counsel to the corporation.  *Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 598
(S.D.N.Y. 2015); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 442
(S.D.N.Y. 1995).

As shown below and in the accompanying declarations, Defendants have met their
burden of establishing that the documents Plaintiff seeks are privileged.

## I.   DEFENDANTS HAVE PROPERLY CLAIMED PRIVILEGE OVER DOCUMENTS RELATING TO SO-CALLED "BUSINESS-RELATED MATTERS" FOR WHICH NO INDIVIDUAL ATTORNEYS ARE IDENTIFIED

Plaintiff's privilege challenges to 171 documents purportedly relating to "business-
related matters" that do not identify a specific attorney on the Privilege Logs are both factually
inaccurate and legally wrong.

To begin with, to the extent that Plaintiff's arguments about this category of documents
are premised on a view that Defendants' Privilege Logs must specifically name an in-house
attorney to establish privilege, that position is legally incorrect.  *See, e.g., In re Currency
Conversion Antitrust Litig.*, No. 05 Civ. 7116(WHP)(THK), 2010 WL 4365548, at *2 (S.D.N.Y.
Nov. 3, 2010) (upholding claim of privilege where privilege log described documents as
"reflecting legal advice of in-house counsel"); *MacNamara v. City of N*.Y., No. 04 Civ
9612(KMK)(JCF), 2007 WL 755401, at *6 (S.D.N.Y. Mar. 14, 2007) (holding that redactions
were proper where privilege log stated that the redactions "described discussions with NYPD

Legal").[3]  Regardless, certain of the documents challenged by Plaintiff in this category ___do___ include specifically named attorneys on the Privilege Logs.  *See, e.g.*, Wilson Decl., Ex. 3 (AGN-00288837; AGN-00347962; AGN-00349674).  Moreover, Plaintiff's unsupported assertion that Defendants were "unable to determine whether any attorney was involved" with respect to certain documents, and therefore only "listed an unidentified 'in-house counsel' under the 'Underlying Legal Advice' column" of their Privilege Logs, Pl.'s Br. at 10-11, is factually incorrect.  As Defendants would have explained to Plaintiff had Plaintiff made any effort to meet and confer with Defendants on this issue, the Privilege Logs state "in-house counsel" in the "Attorneys on Underlying Legal Advice" column where there is no attorney specifically named in the relevant document but the document itself explicitly refers to a request for, or provision of, legal advice from "Legal," which is a reference to attorneys in Allergan's in-house legal department.  Gerber Decl. ¶ 9.  This is true of each of the documents identified on the Privilege Logs as involving "in-house counsel," including the sample documents submitted by Plaintiff for *in camera* review.  *See* Wilson Decl., Ex. 5.  To the extent that there are any entries on the Privilege Logs that do not name a specific attorney or mention "in-house counsel," which is difficult to discern from the unclear descriptions in Plaintiff's brief,[4] that appears to be because

---

[3]  The cases cited by Plaintiff are not to the contrary.  In *In re Rivastigmine Pat. Litig.*, the party asserting privilege had merely listed company's "Patent and Trademark Department," which included both attorneys and non-attorneys. 237 F.R.D. 69, 84 (S.D.N.Y. 2006), *remanded in part on other grounds by* 239 F.R.D. 351 (S.D.N.Y. 2006).  The court thus found that it could not uphold a claim of privilege because the party failed to establish that an attorney, rather than a non-attorney member of that department, was involved in the communications.  Similarly, in *Certain Underwriters at Lloyds's v. Nat'l R.R. Passenger Corp.*, 162 F. Supp. 3d 145 (E.D.N.Y. 2016), the court held that privilege had not been established because the privilege logs failed to identify whether the recipients (described as "'Underwriters at Interest', 'Interested Underwriters,'" or "'Subscribing Insurers'") were clients of the attorneys who sent the communications.  *Id.* at 155.

[4]  Although Plaintiff purports to challenge 171 documents in this category, it also asserts that there are "395 entries that include" some unspecified number of "documents in this category" where "Defendant has not even made an effort to determine whether any attorney was involved in the solicitation or provision of legal advice," as well as "a further 220 entries in the category" where "an unidentified 'in-house counsel'" is listed.  Pl.'s Br. at 10-11. Although Defendants do not fully understand where these numbers come from or how they related to each other, in large part because of Plaintiff's failure to fully meet and confer on these issues before raising them with the Court, Defendants entirely reject the contention that they have "not even made an effort to determine whether any attorney

Plaintiff did not previously challenge Defendants' assertion of privilege over those documents on that basis. Needless to say, Defendants' obligation to supplement the information in their logs was "limited to those elements of the privilege or protection challenged by" Plaintiff. *S.E.C. v. Beacon Hill Asset Mgmt. LLC*, 231 F.R.D. 134, 140 (S.D.N.Y. 2004); 8 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2016.1 at 318. Defendants were thus under no obligation to supplement their logs by identifying additional attorneys with respect to those documents, and Plaintiff's attempt to challenge these documents on this basis for the first time before this Court should be rejected. *See, e.g., Excess Ins. Co., Ltd. v. Rochdale Ins. Co.*, No. 05 Civ. 10174, 2007 WL 2900217, at *1 (S.D.N.Y. Oct. 4, 2007) ("The purpose of the meet and confer requirement is to resolve discovery matters without the court's intervention to the greatest extent possible. Only those matters that remain unresolved after serious attempts to reach agreement should be the subject of a motion to compel.").

Plaintiff's additional assertion that "[t]hese communications are further suspect in that the privilege descriptions provided by Defendants pertain to non-legal matters," Pl.'s Br. at 11, likewise fails. Plaintiff's argument in this respect elides the distinction between the "Privilege Basis" and "Privilege Subject Matter" of the relevant documents. As is evident from the "Privilege Basis" column, each of the documents were withheld or redacted because the contents of those documents included either: (i) a request for legal advice; (ii) the provision of legal advice; (iii) reflected legal advice; or (iv) provided information for the purpose of requesting legal advice. The subject matter that such legal advice pertained to—reflected in the "Privilege Subject Matter" column—is irrelevant to the determination of privilege. That legal advice is

---

was involved in providing the underlying legal advice that was allegedly discussed." *Id.* at 10. As set forth in the Gerber Declaration, Defendants carefully reviewed the privileged documents that Plaintiff has challenged—not once, but twice—to ensure that for each document that Defendants redacted or withheld, there was an attorney involved who was providing, or being solicited for, legal advice. Gerber Decl. ¶ 9.

provided or solicited in connection with supposedly "business-related matters," *Id.* at 9-10, does not make it any less legal.  Because each of those documents provided, requested, or otherwise reflected, legal advice, they are privileged.  *See Gen. Elec. Co. v. United States*, No. 3:14-CV-00190 (JAM), 2015 WL 5443479, at *2 (D. Conn. Sept. 15, 2015) (finding documents privileged where privilege log explicitly describe documents as "reflecting legal advice" despite challenger's claim that they "were predominantly for business purposes").

Finally, Plaintiff's further assertion that "documents that merely 'reflect' legal advice" are not privileged, Pl.'s Br. at 11, likewise misses the mark.  Courts consistently uphold privilege assertions over documents described as "reflecting legal advice."  *See In re Currency,* 2010 WL 4365548, at *2 (holding that descriptions such as "training document reflecting legal advice from in-house counsel re arbitration provision" are sufficient to invoke the privilege); *S.E.C. v. Beacon Hill Asset Mgmt. LLC*, 231 F.R.D at 144 (upholding privilege log description of correspondence "seeking, transmitting or reflecting legal advice").  Indeed, it is well established that "communications among corporate employees that *reflect* advice rendered by counsel to the corporation" are protected under the attorney-client privilege.  *Bank Brussels,* 160 F.R.D. at 442 (internal citations omitted) (emphasis added).[5]

Accordingly, the Court should reject Plaintiff's challenges with respect to all of the documents identified in this category.

---

[5]  Plaintiff's contention that "the actions taken by the client in response is a fact that is not covered by privilege" Pl.'s Br. at 11, is irrelevant here, as Defendants did not claim privilege over documents that only reflected Allergan's actions in response to legal advice—rather than the legal advice itself.

II.    **DEFENDANTS HAVE PROPERLY CLAIMED PRIVILEGE OVER DOCUMENTS RELATING TO SO-CALLED "BUSINESS-RELATED MATTERS" ON WHICH ATTORNEYS WERE COPIED**

Plaintiff's objection to a second category of documents that purportedly concerned "business-related matters" and that copied specifically named attorneys fails for many of the same reasons.

As an initial matter, Plaintiff appears to take the position that these documents are not privileged merely because the attorneys were copied on the documents, instead of being included in the "To" or "From" line of these emails.  But no such bright-line rule exists.  Courts routinely approve parties' claims of privilege over emails on which lawyers are copied where, as here, the other elements of privilege are met.  *See, e.g.*, *TVT Records, Inc. v. The Island Def Jam Music Grp.*, No. 02 Civ. 6644 (VMDF), 2003 WL 749801, at *6, (S.D.N.Y. Mar. 5, 2003) (finding that emails were privileged where counsel was copied in order to obtain legal advice); *In re N.Y. Renu with Moistureloc Prod. Liab. Litig.*, No. MDL 1785, 2008 WL 2338552, at *10 (D.S.C. May 8, 2008) (rejecting argument that email cannot be privileged where the lawyer is only cc'd because "[s]uch a limitation would be inconsistent with the way that emails are sent" and noting that "[s]ending an email by 'cc' is usually a question of convenience rather than an expression of some intent to delineate priorities").

To be sure, where non-legal personnel are specifically asked "to respond to some problem or issue," merely including an attorney on the email will not automatically render the email privileged.  *In re Buspirone Antitrust Litig.*, 211 F.R.D. 249, 253 (S.D.N.Y. 2002).  But "the fact that a request to counsel was sent simultaneously to non-legal personnel [does] not by itself dictate the conclusion that the document was not prepared for the purpose of obtaining legal advice."  *Id*.  Nor is "the mere fact that a document is sent to many non-legal and few legal personnel . . . determinative of whether it is privileged."  *Id.* (internal quotations omitted).

Indeed, even where the request for legal advice is not explicit, "information sent to corporate counsel . . . with the expectation that the attorney will respond in the event that the matter raises important legal issues" is no less privileged than "an explicit request." *Id.* at 254 (quoting *In re Pfizer, Inc. Sec. Litig.*, No. 90 Civ. 1260 (SS), 1993 WL 561125, at *6 (S.D.N.Y. Dec. 23, 1993)).

Here, the documents challenged by Plaintiff in this category all included, at the very least, "an implied request for legal advice." *Pfizer*, 1993 WL 561125, at *6. And while, as with the documents challenged in the prior category, Plaintiff attempts to cast doubt on the privilege status of these documents by mischaracterizing them as "having subject matters that are not legal in nature," Pl.'s Br. at 13, it is not surprising that documents pertaining to subjects like media statements, customer communications, or marketing press releases would raise important legal issues in light of the highly-regulated nature of the pharmaceutical industry. *Cf. Gen. Elec.*, 2015 WL 5443479, at *2 (noting that "in view of the . . . substantial legal regulatory overtones" governing the transactions "at issue in th[e] case, it is far from surprising that GE would validly claim privilege to a large proportion of responsive documents").

Perhaps recognizing that the inclusion of attorneys on these emails "with the expectation that . . . [they] respond" renders such communications privileged, *In re Buspirone*, 211 F.R.D. at 254 (internal citations omitted), Plaintiff claims that "[o]n many of the redacted chains, the in-house counsel included on the email fails to weigh in on the matter being discussed, further evincing that the predominant purpose of the communication was non legal." Pl.'s Br. at 13. Not so. Although in some instances one version of the redacted email chain may not include a response from in-house counsel, there is frequently another version of the same email chain where the copied in-house counsel does weigh in. Indeed, for nearly all 12 sample documents

submitted by Plaintiff for *in camera* review in this category, *see* Wilson Decl., Ex. 6, there is another version of the document where the in-house counsel "weighs in," or where the non-privileged portion of the chain has been otherwise produced without redactions. *See, e.g.,* Gerber Decl., Ex. 1-3. That the attorneys responded in these other iterations of the email chain shows that the chain reflected a request for legal advice, and that the relevant attorneys were not "unnecessarily" copied. In any event, it does not matter whether in-house counsel did or did not ultimately respond to the request for legal advice, because privilege is established merely by the request for legal advice. *In re Buspirone*, 211 F.R.D. at 253 (internal citation omitted).

The document bates-stamped AGN-00524245—which Plaintiff screenshots in the text of its brief, but does not challenge, *see* Pl.'s Br. 14 & n.10—does not show otherwise. As with the other documents that Plaintiff challenges in this category, this email thread is an example of in-house counsel being kept apprised of issues with "the expectation that the attorney will respond in the event that the matter raises important legal issues." *In re Buspirone*, 211 F.R.D. at 254 (internal citation omitted). Indeed, as is clear from the face of that document, the email thread concerns ██████████████████████████████████████████████████████████████,
which is precisely the sort of document that Allergan's in-house counsel would be expected to provide legal advice about.

Similarly, Plaintiff incorrectly suggests that Defendants "completely redacted" the document bates-stamped AGN-00540956, despite having "determined based on their re-review that it was originally improperly withheld." Pl.'s Br. at 14. Although Defendants determined that the family to which that document belonged should not be withheld in its entirety, the specific document identified by Plaintiff remained redacted because it was attached to a privileged email from Dawn De Cruz to Jose Leite Da Costa and Anthony Sauerman, all three of

whom are attorneys. Had Plaintiff properly met and conferred with Defendants about this issue, rather than raising it for the first time in its submissions to the Court, Defendants would have explained why this document remains redacted. Thus, rather than showing that Defendants have been acting in an "arbitrary, haphazard, and over-aggressive manner," as Plaintiff contends, Pl.'s Br. at 15, this document instead demonstrates that Plaintiff's repeated failure to engage in a good faith meet-and-confer process has unnecessarily burdened the Court with this dispute.

## III.   DEFENDANTS HAVE PROPERLY CLAIMED PRIVILEGE OVER DOCUMENTS RELATING TO SO-CALLED "POSSIBLY LEGAL SUBJECT MATTERS" FOR WHICH NO INDIVIDUAL ATTORNEYS ARE IDENTIFIED

As with the first category of documents discussed above, Plaintiff wrongly claims that an additional set of documents, which concern "possibly legal subject matters," are not privileged merely because the Privilege Logs identified "in-house counsel" in the "Underlying Legal Advice" column. Pl.'s Br. at 15. Indeed, the only difference between these two challenges is Plaintiff's apparent concession that these documents do not pertain to "business matters." *Id.* But, as discussed above, *see infra* § I, Defendants only identified "in-house counsel" as the relevant attorney where it was clear from the face of the document that "Legal" had been asked for advice or that "Legal" had provided advice. And, again, the mere fact that Defendants did not specifically name an "in-house" attorney on the underlying legal advice does not make these documents any less privileged. *See, e.g., In re Currency Conversion*, 2010 WL 4365548, at *2; *MacNamara v. City of New York*, 2007 WL 755401, at *6.

## IV.   DEFENDANTS HAVE NOT WAIVED PRIVILEGE OVER DOCUMENTS SHARED WITH THIRD PARTY CONSULTANTS

Plaintiff's blanket assertion that Defendants waived privilege with respect to otherwise privileged communications shared with Allergan's third-party consultants also runs afoul of well-settled law.

14

As Plaintiff acknowledges, courts have recognized several exceptions to the general rule that privilege is waived where an otherwise privileged communication is shared with a third party. *See Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 87 (S.D.N.Y. 2019). Such exceptions include: "(1) cases in which the third party is deemed essential to allow communication between the attorney and the client . . . (2) cases involving communications between a third party and a corporation's attorney where the third party is deemed the 'functional equivalent' of a corporate employee . . . and (3) cases involving consultants used by lawyers to assist in performing certain tasks that go beyond advising a client as to the law – in particular, tasks that promote broader public interests in the observance of law and administration of justice." *Id.* (internal quotations and citations omitted). The third parties identified on Defendants' Privilege Logs—such as public relations firms, financial advisors, medical device distributors, and individual doctors—were acting in such roles at the times of the privileged communications at issue, and thus clearly fall within the waiver exceptions.

*First*, inclusion of public relations firms and financial advisors, such as ████████ ████████████████████████ on otherwise privileged communications does not waive privilege under the circumstances here. Notably, Allergan's public relation consultants were at points supervised by Allergan's in-house counsel and were retained to advise Allergan on issues including public statements, regulatory presentations, media inquiries, and government communications on issues arising from Allergan's breast implant business that carried legal risks. *See* Declaration Of Taylor K. Reynolds In Support Of Defendants' Opposition To Lead Plaintiff's Motion To Compel ("Reynolds Decl.") ¶¶ 8-36. As recognized by Judge Kaplan in *In re Grand Jury Subpoenas Dated March 24, 2003*, 265 F. Supp. 2d 321, 330-331 (S.D.N.Y. 2003),

communications with public relation consultants on such tasks are protected by attorney-client privilege:

> This Court is persuaded that the ability of lawyers to perform some of their most fundamental client functions. . . would be undermined seriously if lawyers were not able to engage in frank discussions of facts and strategies with the lawyers' public relations consultants. For example, lawyers may need skilled advice as to whether and how possible statements to the press—ranging from 'no comment' to detailed factual presentations—likely would be reported in order to advise a client as to whether the making of particular statements would be in the client's legal interest. And there simply is no practical way for such discussions to occur with the public relations consultants if the lawyers were not able to inform the consultants of at least some non-public facts, as well as the lawyers' defense strategies and tactics, free of the fear that the consultants could be forced to disclose those discussions.

*Id.* at 330-31; *see also In re Abilify (Aripiprazole) Prods. Liab. Litig.*, No. 3:15-md-2734, 2017 WL 6757558, at *8 (N.D. Fla. Dec. 29, 2017) ("In the world today—where a drug manufacturer may face liability in the hundreds of millions of dollars in a product liability suit—it is not only common but necessary to involve public relations and marketing consultants to assist in-house counsel and outside counsel in responding to media inquiries regarding ongoing or threatened legal actions.  So long as the role of the consultant is to assist legal counsel in responding to the media the protections of the attorney-client privilege should apply the same as where a corporate employee is tasked with responding to media inquiries.").  Such necessity also applied here, where Allergan, including its in-house counsel, at times relied on public relation consultants for guidance in communicating with government and regulatory agencies and the media on issues involving BIA-ALCL—an issue which involved significant legal risk.  *See* Reynolds Decl. ¶¶ 8-36.  Significantly, although unmentioned by Plaintiff, Defendants produced numerous documents involving Allergan's third party public relation consultants that copied in-house lawyers, where those documents were purely factual in nature and did not contain explicit legal advice.

For similar reasons, it is also uncontroversial that the inclusion of financial advisors such as ████████████ in connection with merger strategy and/or other corporate events does not waive privilege over otherwise privileged communications.  *See* Reynolds Decl. ¶¶ 40-42; *Pearlstein v. Blackberry Ltd,* No. 13-CV-7060, 2019 WL 2281280, at *2 (S.D.N.Y. May 29, 2019) (holding that financial advisors on communications with counsel did not waive privilege where the financial advisors were acting as the company's agents, where the communications were intended to be kept confidential, and where the financial advisors were providing counsel with information about "strategic and transactional matters about which [the advisors] had expertise").[6]

*Second,* Allergan's communications with a number of affiliates (such as ████ ███████████████████████████████████, distributors, and physicians on the company's ███████████████████████████, among other consultants, also clearly fall within the exception to the attorney-client privilege waiver.  At the time of the communications at issue, such affiliates, distributors, and consultants undertook responsibilities on various tasks on behalf of Allergan, such as distributing and promoting products in various local markets, that often required receiving instructions and legal advice directly from Allergan's in-house counsel.  *See* Reynolds Decl. ¶¶ 37-39.  For example, the document bates-stamped AGN-00473357, which Defendants produced in redacted form, shows Allergan's in-house counsel Dawn De Cruz providing legal instruction to ███████████████████████████ ██████████████████████.  *See* Gerber Decl., Ex. 4.  Donald Bunnin, a member of Allergan's in-house counsel, also was involved in correspondence with the ███████████

---

[6] Many of the communications challenged by Plaintiff in which Defendants corresponded with financial advisors are, in any event, not responsive.  Thus, even if the documents are not privileged (which they are), the documents would not need to be produced.

██████████████████████ *See*, *e.g.*, Wilson Decl., Ex. 4 (Log No. 1928).  Courts have found

that consultants who operate in such roles merit attorney-client privilege protection.  *See In re*

*Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 216 (S.D.N.Y. 2001) (holding that a consultant

was entitled to attorney-client protection due to the client's role in "having authority to make

decisions and statements on the [the company's] behalf and seeking and receiving legal advice

from [the company's] counsel with respect to the performance of its duties.").

　　　　Plaintiff's identified sample documents similarly do not point towards a waiver of

attorney-client privilege.  All of those sample documents involved third-party public relations

consultants or Allergan's ███████████████████████ acting in roles protected by

the recognized exceptions to attorney-client privilege waiver.  Plaintiff makes the unsupported

claim that the third party consultants were providing business, not legal advice, in these

communications.  However, the context of the emails indicate that the issues discussed did, in

fact, have implications on the legal risks arising from Allergan's breast implant business.  For

example, in the document bates-stamped AGN-00275427, █████████████████

██████████████████████████████████████████████

████████████████████████████ ███████████████████████

███████████████████████████████ Wilson Decl., Ex. 8.  The

information redacted from this document reflects the involvement of Allergan's legal team on a

response to findings that could impact Allergan's legal risk relating to its breast implant

business.  Similarly, in the document bates-stamped AGN-00542165, Allergan, ███████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████. *See id.*; Reynolds Decl. ¶¶

13-19.[7]  It is also is of no import, contrary to Plaintiff's claim, that certain communications were

not explicitly from or directed to Allergan's in-house counsel.  As noted by the court in *In re*

*Grand Jury Subpoenas Dated March 24, 2003*, 265 F. Supp. 2d 321, 331 (S.D.N.Y. 2003), such

a distinction is "mere formalism" because communications—including those shared with third

party consultants—are protected regardless of whether they are directed at an attorney, as long as

"the communication be made in confidence for the purpose of obtaining legal advice from the

lawyer."

## V.   DEFENDANTS HAVE NOT WAIVED PRIVILEGE OVER DOCUMENTS PURPORTED TO HAVE BEEN "WIDELY DISSEMINATED" TO ALLERGAN EMPLOYEES

Finally**,** Plaintiff's contention that privilege was waived with respect to communications

that were supposedly "widely disseminated" among Allergan employees also fails.  *See* Pl.'s Br.

at 21-22.

As an initial matter, several of the documents that Plaintiff challenge involve legal advice

provided to or shared with a group of employees who constituted a ██████████████

███████████████████████████████████████████████████████

████████████████████████████  *See, e.g.*, AGN-00466746, AGN-

00355792; Gerber Decl. Ex. 5-6. ████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████

---

[7] One sample document designated by Plaintiff was also produced in unredacted form.  *Compare* AGN-00284460 *with* AGN-00007885.

19

██████████████████████████████████████████████████████████████

████████████████████████████████

Moreover, the challenged documents that were shared with employees outside of the

████████████████████ are likewise privileged because all of the Allergan employees included on

those communications had a "need to know" the information at issue due to their roles on teams

integral to Allergan's breast implant business, and Allergan reasonably limited the dissemination

of such information to keep such communications confidential.  *See* Reynolds Decl. ¶ 6; *In re*

*Buspirone Antitrust Litigation,* 211 F.R.D. at 255 (stating that "[t]he Company's burden is to

show that it limited its dissemination of the documents in keeping with their asserted

confidentiality, not to justify each determination that a particular employee should have access to

the information therein").[8]  For example, in the documents bates-stamped AGN-00424292 and

AGN-00424281, two documents submitted by Plaintiff as samples which are actually copies of

the same email, the redacted information conveyed legal guidance by Allergan's in-house legal

team ████████████████████████████████████████ to a necessary set of

employees whose responsibilities and duties could be implicated by such a regulatory decision.

*See* Wilson Decl., Ex. 9.  Such a limitation is enough to preserve attorney-client protection.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel should be denied.  Alternatively,

should the Court deem it necessary to perform an *in camera* review of the documents that

---

[8] The cases Plaintiff cites are inapposite.  Specifically, neither court in those two cases looks to the number of employees included on communications as a relevant factor in determining privilege.  Rather, in *Scott v. Chipotle Mexican Grill, Inc*, 94 F. Supp. 3d 585 (S.D.N.Y. 2015), the court found privilege waived for certain communications, not because communications were shared with a large number of employees, but because the communications reflected business, rather than legal, advice.  *See id.* at 600.  Similarly, in *United States v. Mejia,* 655 F.3d 126 (2d Cir. 2011), the court found that an incarcerated party could not claim privilege over telephone calls the party was aware were being recorded.  *See id.* at 134-35.

Plaintiff has submitted, Defendants are prepared to submit additional documents to inform the

Court's review.

Dated: July 8, 2021
       New York, New York

Respectfully submitted,

Roger A. Cooper (racooper@cgsh.com)
Jared Gerber (jgerber@cgsh.com)
Avion Tai (atai@cgsh.com)
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York  10006
T: 212-225-2000
F: 212-225-3999

*Attorneys for Defendants Allergan plc, Brenton
L. Saunders, Maria Teresa Hilado, Matthew
M. Walsh, Frances DeSena, Mark Marmur,
Paul Bisaro, and William Meury*

21